**Tomas L. KOWALAK,**
**Petitioner-Appellant,**

v.

**UNITED STATES of America,**
**Respondent-Appellee.**

No. 79–5177.

United States Court of Appeals,
Sixth Circuit.

Argued June 18, 1980.

Decided March 31, 1981.

---

Edward Wishnow, Southfield, Mich., for petitioner-appellant.

James K. Robinson, U. S. Atty., Steven D. Weyhing, Asst. U. S. Atty., Detroit, Mich., for respondent-appellee.

Before EDWARDS, Chief Judge, MER-RITT, Circuit Judge, and PECK, Senior Circuit Judge.

JOHN W. PECK, Senior Circuit Judge.

The defendant-appellant perfected this appeal from an order of the district court denying him relief under a motion filed pursuant to 28 U.S.C. § 2255. His claim for relief was based on appellee's alleged violation of appellant's rights under Article IV(e) of the Interstate Agreement on Detainers (18 U.S.C. App., hereinafter "IAD"), and on other alleged deprivations not material to this opinion. Article IV(e) reads as follows:

> If trial is not had on any indictment, information, or complaint contemplated herein prior to the prisoner's being returned to the original place of imprisonment pursuant to article V(e) hereof, such indictment, information or complaint shall not be of any further force or effect, and the court shall enter an order dismissing the same with prejudice.

Appellant's contention was and is that he was entitled to the entry of "an order dismissing [the charge against him] with prejudice."

The conviction which appellant collaterally attacks in his § 2255 motion grew out of his plea of guilty to a charge of armed bank robbery under 18 U.S.C. § 2113(a) and (d). A committed sentence of eight years was imposed to run consecutively to an earlier state sentence of not less than three nor more than five years.

On January 12, 1976, defendant-appellant had been arrested and charged under the federal complaint. At that time he was an

escapee from the Michigan Department of Corrections (State Prison of Southern Michigan at Jackson, hereinafter Jackson), and a federal detainer was placed on him at the Wayne County Jail. He was turned over to the Sheriff of Wayne County for transportation back to Jackson. When such transportation had been accomplished, the Sheriff gave the authorities at Jackson the federal detainer, which was placed in the prison files. Two weeks later, appellant was returned to federal custody pursuant to a writ of habeas corpus ad prosequendum, and he was arraigned on the indictment, and then again returned to Jackson on February 10, 1976.

On April 1, pursuant to a second writ of habeas corpus ad prosequendum, appellant was again taken into federal custody, and on April 9 he pleaded guilty in the United States District Court to armed bank robbery. Thereafter, on April 12, he was returned to Jackson. Pursuant to still another writ of habeas corpus ad prosequendum, appellant was again brought back to federal custody, and on June 16 sentence was imposed, and he was again returned on that day to Jackson. On that day a federal detainer was also placed on the appellant, and receipt of the detainer was formally acknowledged on June 21, 1976, by the Superintendent of Records at Jackson.

On March 9, 1978, appellant filed the § 2255 motion which initiated the present action. In that motion, appellant for the first time contended that his rights under Article IV(e) of the IAD had been violated. As previously indicated, denial of that motion was followed by this appeal.

■ In his memorandum opinion, the district judge stated that "[i]t is clear that in this case the provisions of the IAD were violated," and neither party takes issue with that mixed finding of fact and conclusion of law. Implicit in that determination is the conclusion that, contrary to the government's argument, the fact that the first federal detainer was placed in the prison file at Jackson without a formal acknowledgment of such receipt having been recorded is without legal significance.

Thus there is no occasion for a remand for the taking of evidence on this point. We adopt the district court's implicit conclusion as to the validity of that detainer.

■ In *Mars v. United States,* 615 F.2d 704 (6th Cir.), *cert. denied,* —— U.S. ——, 101 S.Ct. 138, 66 L.Ed.2d 60 (1980) we held that a claim for relief on the ground of a violation of Art. IV(e) of the IAD was not cognizable under 28 U.S.C. § 2255 where that claim fell short of the standards set forth in *Davis v. United States,* 417 U.S. 333, 94 S.Ct. 2298, 41 L.Ed.2d 109 (1974), for determining when a violation of law can be raised under § 2255. However, in *Mars* we noted that § 2255 relief for violations of the IAD was not foreclosed in instances where the petitioner can show that he was actually prejudiced by the violations or that his IAD rights properly asserted before the trial court were not properly addressed. 615 F.2d at 707 n.9. We need not reach the question whether the violation of the IAD asserted in the present case is cognizable under § 2255 since we conclude that appellant's guilty plea prior to raising any question of IAD violations was a waiver of his rights under the IAD.

In *United States v. Eaddy (Eaddy II),* 595 F.2d 341 (6th Cir. 1979), we held that the rights created by Article IV of the IAD are nonjurisdictional and waivable. We decided that Mr. Eaddy had forfeited his right to raise an IAD Article IV(e) violation by failing to assert it prior to or during trial in the district court. We reaffirmed this holding in *Mars,* where we concluded that that appellant had also waived any claim for relief under the IAD through his failure to raise that claim before trial. 615 F.2d at 707. The dissent appears to take the position that *Eaddy* and *Mars* are in conflict with our decision in *Stroble v. Anderson,* 587 F.2d 830 (6th Cir. 1978), *cert. denied,* 440 U.S. 940, 99 S.Ct. 1289, 59 L.Ed.2d 499 (1979). In *Stroble* we granted 28 U.S.C. § 2254 relief to a state prisoner because of violations of that prisoner's IAD rights. The issue of IAD violations in *Stroble* had not been raised until after the prisoner had been convicted. However, in *Stroble* the

question whether the prisoner had waived his IAD rights by failing to assert them prior to trial was never presented to or decided by this Court. We thus find no inherent conflict between *Stroble* and our later decisions in *Eaddy* and in *Mars* on this point.[1] We conclude that *Eaddy* and *Mars* are the law of this Circuit, and that IAD rights are nonjurisdictional and waivable.

██ In the present case the appellant first raised his IAD claim after he had entered a plea of guilty and had been sentenced. A valid guilty plea is generally regarded as a waiver of all nonjurisdictional defects or errors. *E. g., Franklin v. United States,* 589 F.2d 192 (5th Cir.), *cert. denied,* 441 U.S. 950, 99 S.Ct. 2177, 60 L.Ed.2d 1055 (1979); *Camp v. United States,* 587 F.2d 397 (8th Cir. 1978). This rule has been applied in the context of claims under the IAD. *Camp, supra; United States v. Palmer,* 574 F.2d 164, 167 (3d Cir.), *cert. denied,* 437 U.S. 907, 98 S.Ct. 3097, 57 L.Ed.2d 1138 (1978) ("[T]he violation of a statutory provision such as Article IV(e) is not sufficiently important to deny a court jurisdiction to entertain a guilty plea where the defendant fails to raise the issue in a timely manner.") It should be noted that in *Palmer*, which the district court entirely adopted, the defendant was the apparent beneficiary of a plea bargain. *See* 574 F.2d at 166 n. 3. One reading of *Palmer* is that a defendant is barred from asserting a possible IAD violation after a plea, when defendant has made a "rational and voluntary decision to accept the benefits of pleading guilty." *Id.* at 166.

As we stated in *Eaddy* and reaffirmed in *Mars,* "to allow a person to assert violations of the Agreement [IAD] beyond the trial stage, without a showing of cause ... would ... undercut the policy of achieving prompt and final judgments." 595 F.2d at 346; 615 F.2d at 707. Obviously, to permit the raising of IAD questions after a plea of guilty, entry of judgment, and sentencing involves the same concerns. We therefore conclude that entry of a plea of guilty is just as surely a waiver of the right to raise IAD violations as was the commencement of trial in *Eaddy* and in *Mars.* Both pleading guilty and standing trial are the sort of "affirmative request to be treated in a manner contrary to the procedures prescribed by Article IV(c) or (e)" that may constitute a voluntary waiver of IAD rights. 595 F.2d at 344.

██ The most disconcerting matter raised by the appellant's *pro se* petition to the district court concerned the competence of his former counsel. Appellant alleged that his defense counsel did not inform him of his rights under IAD and advised appellant that he could only fulfill his wish to remain in federal custody by pleading guilty to the federal charges against him. These allegations raise grave doubts about the quality of assistance which appellant received in making his guilty plea. Appellant's assertions are uncontradicted by the scant record before us, and it is clear that his former counsel was unaware of or chose to ignore the provisions of the IAD. In these circumstances we can only conclude that the district court abused its discretion in denying appellant's § 2255 motion without an evidentiary hearing. Appellant's former counsel allegedly failed to assert a defense which would have barred the prosecution of charges against her client. A Sixth-Amendment claim grounded on such

---

1. The dissent's reliance on *United States v. Mauro,* 436 U.S. 340, 98 S.Ct. 1834, 56 L.Ed.2d 329 (1978), is puzzling. We find nothing in *Mauro* to suggest that IAD rights are nonwaivable. On the contrary, the Court in *Mauro* considered whether one defendant had waived the protections of Article IV(c) of the IAD and concluded that on the facts of the case he had not.

Article IV(c) requires a receiving state to begin a detainee's trial within 120 days. *Mauro* held that insistence by a defendant on a speedy trial was sufficient to invoke this provision, even though the IAD was not specifically named in defendant's motions. See 436 U.S. at 364–65, 98 S.Ct. at 1849. This factual analysis would have been pointless if the Court were of the opinion that IAD rights could not be waived.

Neither of the two defendants in *Mauro* and the consolidated case had pleaded guilty. Nor had the defendant in *Stroble.* See 587 F.2d at 832.

a credible allegation, even if unartfully worded in a *pro se* motion, must be explored at a hearing which gives a defendant an adequate opportunity to shoulder his burden of showing the inadequacy of his counsel. *See Venable v. Neil,* 463 F.2d 1167 (6th Cir.), *cert. denied,* 409 U.S. 1079, 93 S.Ct. 677, 34 L.Ed.2d 669 (1972); *Goodwin v. Cardwell,* 432 F.2d 521 (6th Cir. 1970). In the event that upon remand a determination is made that the appellant did not receive effective assistance of counsel in making his guilty plea and a withdrawal of that plea is permitted, then his waiver of his rights under IAD because of that plea must also be invalid.

This court's remand should not be interpreted as expressing or intimating a view on the question whether the failure of counsel to advise her client of his rights under the IAD is *per se* ineffective assistance of counsel.

Reversed and remanded for an evidentiary hearing.

EDWARDS, Chief Judge, dissenting in part and concurring in part.

I disagree strongly with the refusal to enforce the law set forth in the Interstate Agreement on Detainers and its interpretation by the United States Supreme Court in *United States v. Mauro,* 436 U.S. 340, 98 S.Ct. 1834, 56 L.Ed.2d 329 (1978), and this court's interpretation in *Stroble v. Anderson,* 587 F.2d 830 (6th Cir. 1978), *cert. denied,* 440 U.S. 940, 99 S.Ct. 1289, 59 L.Ed.2d 499 (1979). See also *Mars v. United States,* 615 F.2d 704, 708 (6th Cir.) (Edwards, dissenting), *cert. denied,* —— U.S. ——, 101 S.Ct. 138, 66 L.Ed.2d 60 (1980).

I concur, however, with remand for consideration of the issue of ineffectiveness of counsel.